UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KELLI MOORE and CHARLES MOORE, *for* )
*themselves and their minor children, J.S.M.* )
*and J.L.M.*, )
            )    No. 1:23-cv-00089-JMS-MG
     *Plaintiffs*, )
            )
     *vs.* )
            )
CHARLA DAVIS, RECEEIA BELLAMY, LEIGH )
ANNE MOORE, DAVID BALMER, and )
MONIQUE MILLER, )
            )
     *Defendants*. )

## ORDER

Plaintiffs Kelli and Charles Moore ("the Moores"), who are married, were foster parents to Mr. Moore's sister's biological children ("the Children") after the birth parents' parental rights were terminated. The Moores eventually adopted the Children, but were investigated by the Indiana Department of Child Services ("DCS") on numerous occasions both before and after the adoption. On January 13, 2023, the Moores initiated this litigation against DCS employees Charla Davis, Receeia Bellamy, Leigh Anne Moore, and David Balmer (collectively, "the State Defendants"), and Monique Miller, the Children's appointed guardian ad litem. [Filing No. 1.] Ms. Miller and the State Defendants have filed Motions to Dismiss, [Filing No. 32; Filing No. 37], and the Moores have filed a Motion to Exclude related to certain evidence the State Defendants rely upon in their Motion to Dismiss, [Filing No. 42]. These motions are now ripe for the Court's review.

## I.
### STANDARD OF REVIEW

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with

"fair notice of what the…claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quotation and citation omitted).  In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff.  *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).  A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief.  *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### ADMISSIBILITY OF STATE DEFENDANTS' EXHIBIT

Before setting forth the allegations in the Amended Complaint, the Court considers the Moores' Motion to Exclude an exhibit that the State Defendants submitted with their Motion to Dismiss, because determination of the Motion to Exclude bears on the factual allegations that the Court will consider in resolving the Motions to Dismiss.  Specifically, after the Children were found to be children in need of services ("CHINS"), Ms. Miller and DCS filed a Motion to Modify Placement in the Marion Superior Court (the "CHINS Court") as part of a CHINS case.  [Filing No. 37-1.]  With their Motion to Dismiss in this case, the State Defendants submitted the Motion to Modify Placement, which stated that the Children were in foster care with the Moores and that the CHINS Court had received a letter from a sibling of the Children ("the Sibling") stating that

- 2 -

the Moores were mistreating the Children.[1]  The Motion to Modify Placement attached the Sibling's letter as an exhibit, and also attached an Affidavit from Ms. Miller and an Affidavit from Ms. Davis and Ms. Bellamy in which they outlined concerning reports they had received from the Sibling regarding the Moores' treatment of the Children.  [Filing No. 37-1 at 4-7; Filing No. 37-1 at 10-11.]  Ms. Moore and DCS requested that the Children be moved out of placement with the Moores and placed into the Sibling's foster home.  [Filing No. 37-1 at 7.]

In their Motion to Exclude, the Moores argue that the Court should not consider matters outside the pleadings in connection with the State Defendants' Motion to Dismiss, unless the Motion to Dismiss is converted into a Motion for Summary Judgment.  [Filing No. 42 at 2.]  They assert that the Court can only consider documents that are central to the Amended Complaint, are referred to in the Amended Complaint, or constitute information of which the Court can take judicial notice.  [Filing No. 42 at 2.]  The Moores argue that the Motion to Modify Placement and attached exhibits "do[ ] not address [their] allegations in a way that shows that [they] cannot satisfy the Rule 12(b)(6) standard."  [Filing No. 42 at 3.]

In their response, the State Defendants argue that the Amended Complaint directly refers to the Motion to Modify Placement numerous times, so it is proper for the Court to consider it in connection with the Motion to Dismiss.  [Filing No. 49 at 1-2.]

The Moores did not file a reply brief.

---

[1] Based on the redaction of identifying information in the Sibling's letter, it is difficult to discern the exact relationship between the Sibling and the Children, and the Sibling and the Moores.  It appears that the Sibling was in separate foster care, but at one time had been placed in foster care with the Moores along with the Children (his natural siblings), and observed the issues he references in his letter during that time.  The exact relationships are not relevant to the Court's decision, but the Court has done its best to characterize the relationships accurately.

"[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.  Such documents may be considered by a district court in ruling on the motion to dismiss." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).  The Moores rely upon and reference the Motion to Modify Placement numerous times in the Amended Complaint.  [*See, e.g.*, Filing No. 27 at 6 ("On March 31, 2021, [Ms.] Davis, [Ms.] Bellamy, and [Ms.] Miller had [the Motion to Modify Placement] filed in the CHINS Court that asked that [the Children] be removed from the Moores.  The [Motion to Modify Placement] contained the same false accusations against the Moores that DCS had previously unsubstantiated."); Filing No. 27 at 6-7 ("The [Motion to Modify Placement] was in retaliation for the Moores' refusal to provide the false testimony that [Ms.] Davis asked the Moores to provide.  The Moores were not notified that this Motion had been filed against them.  The Motion was not served on the Moores or discussed with the Moores by [Ms.] Davis, [Ms.] Miller or any other representative of DCS, despite the Moores having contact with these persons."); Filing No. 27 at 7 ("The [Motion to Modify Placement] misled the CHINS [C]ourt by failing to fully disclose that investigations into the allegations against the Moores were unsubstantiated by DCS.").]

Because the Moores rely on the Motion to Modify Placement in their Amended Complaint, and since the Motion is central to their claims, [*see* Filing No. 27 at 10 (alleging that the State Defendants violated the Moores' constitutional rights by making misrepresentations in the Motion to Modify Placement and failing to give the Moores notice of the Motion)], the Court can properly consider the Motion to Modify Placement and its exhibits when deciding the State Defendants' Motion to Dismiss.  Additionally, the Court is permitted to take judicial notice of public records in any event, including state court filings like the Motion to Modify Placement.  *See, e.g.*, *Spiegel*

*v. Kim*, 952 F.3d 844, 847 (7th Cir. 2020); *Conn-Selmer Inc. v. Bamber*, 2008 WL 348774, at *4 (N.D. Ind. Feb. 7, 2008).  Accordingly, the Moores' Motion to Exclude is **DENIED**.  [Filing No. 42.]

### III.
### BACKGROUND

The following factual allegations are taken from the Amended Complaint, the operative complaint in this case, and are accepted as true solely for the purpose of this Order.  Additionally, based on its denial of the Moores' Motion to Exclude, the Court also sets forth the contents of the Motion to Modify Placement and its exhibits.

### A.    The Moores Become the Children's Foster Parents

The Children, a girl and a boy, were four and five years old, respectively, at the time this lawsuit was initiated.  [Filing No. 27 at 1.]  When the girl was born, she was removed from her birth mother – who is Charles Moore's sister – on an emergency basis.  [Filing No. 27 at 4.]  Shortly thereafter, DCS filed petitions to initiate a CHINS case.  [Filing No. 27 at 4.]  Ms. Davis was a Family Case Manager for DCS in its Marion County Office, and was assigned to supervise the Children.  [Filing No. 27 at 2-4.]  Ms. Bellamy, also a Family Case Manager for DCS in its Marion County Office, was Ms. Davis's supervisor.  [Filing No. 27 at 2-4.]  Ms. Miller was the guardian ad litem appointed on behalf of the Children.  [Filing No. 27 at 4.]

On April 16, 2018, the CHINS Court ordered that the Children be removed from their birth parents.  [Filing No. 27 at 4.]  After moving back and forth between several foster homes and other placements for nearly a year, DCS placed the Children with the Moores in July 2019.  [Filing No. 27 at 4.]

**B.      The Moores Begin Adoption Proceedings**

In 2020, DCS initiated proceedings to terminate the birth parents' parental rights to the Children, along with their rights to four of the Children's siblings.  [Filing No. 27 at 4.]  In November 2020, Ms. Davis asked the Moores to testify in support of DCS's petition to terminate the parental rights of the Children's birth parents, but the Moores told Ms. Davis that they could not provide the testimony that she had requested because it would be false.  [Filing No. 27 at 5.]

On November 18, 2020, the Moores filed petitions to adopt the Children in Hamilton County Superior Court (the "Probate Court").  [Filing No. 27 at 4.][2]  At the time that the Moores filed the adoption petitions, DCS was supportive of the adoptions.  [Filing No. 27 at 5.]

**C.      The Moores Are Accused of Abusing the Children**

On February 10, 2021, DCS received two reports that the Moores were abusing or neglecting the Children.  [Filing No. 27 at 5.]  The Henry County DCS Office investigated the allegations and found them to be unsubstantiated on March 19, 2021.  [Filing No. 27 at 5.]  On March 30, 2021, DCS received a third report that the Moores were abusing or neglecting the Children.  [Filing No. 27 at 5.]  The Henry County DCS Office investigated the allegations and found them to be unsubstantiated on April 27, 2021.  [Filing No. 27 at 5.]  On April 13, 2021, DCS received a fourth report that the Moores were abusing or neglecting the Children.  [Filing No. 27 at 5.]  These allegations were also investigated by the Henry County DCS Office and found to be unsubstantiated on May 3, 2021.  [Filing No. 27 at 5-6.]  DCS never substantiated any allegations of abuse or neglect against the Moores.  [Filing No. 27 at 6.]

---

[2] Neither the parties nor the pleadings establish why the adoption petition was filed in Hamilton County, given that the Moores resided in Henry County and the CHINS case was initially filed in Marion County.

### D.      DCS Seeks to Remove the Children From the Moores' Home

On March 31, 2021, Ms. Davis, Ms. Bellamy, and Ms. Miller filed the Motion to Modify Placement in the CHINS Court, asking that the Children be removed from the Moores.  [Filing No. 27 at 6.]  The Motion to Modify Placement stated that there were "numerous issues and concerns with the placement of [the Children]" and that the Sibling had written a letter to the CHINS Court.  [Filing No. 37-1 at 1.]  The letter, attached to the Motion to Modify Placement, detailed the Sibling's experience as a foster child of the Moores, including that there was limited access to food, that the foster children "had different punishments, usually it was a whoopin with paddle or a belt," that older foster children were left to care for younger foster children, that the foster children were left home alone, that the Moores would threaten the foster children by telling them they would have to go to the basement or that they would be sent to different foster homes and would not see each other, that the Moores would smack the foster children's hands or spank their buttocks, that Mr. Moore would pass out after drinking and sometimes drove drunk, that the Moores would get into physical fights with each other, that they would leave the foster children with Ms. Moores' grandmother, and that the Moores "lie a[ ]lot."  [Filing No. 37-1 at 8-9.]

Ms. Miller submitted an Affidavit with the Motion to Modify Placement, in which she stated that the Sibling told her during a December 21, 2020 visit that he had something to tell her, but someone was listening and he was unable to tell her at that time.  [Filing No. 37-1 at 4.]  Ms. Miller stated that during a virtual visit with the Sibling, he told Ms. Miller that while he was also living with the Moores, the Moores "used corporal punishment, failed to practice safe sleep with his younger siblings, withheld food from the children, and did not provide the children with adequate adult supervision."  [Filing No. 37-1 at 4.]  Ms. Miller also stated that on February 10, 2021, DCS conducted an assessment regarding the corporal punishment and lack of adult

supervision allegations, and the allegations were unsubstantiated.  [Filing No. 37-1 at 5.]  She stated that she received a call from the Sibling on March 7, 2021, in which he told her that he did not want to be adopted by the Moores but that he was afraid to leave the Children with them, that he was forced to hold his ankles while the Moores paddled him with a board, that he had to leave the room to control his anger when the same happened to the Children, that the Moores withheld food, that the Moores showed favoritism among the foster children, and that there was a lack of supervision and the Moores left the Children alone for up to 12 hours on weekends.  [Filing No. 37-1 at 5.]  Ms. Miller stated that she spoke with the Sibling during a March 20, 2021 visit to the Moores' home and that he stated that the Children are "not treated right and need to get out of there," and that the Moores withhold water from one of the Children so that he does not wet the bed.  [Filing No. 37-1 at 6.]  Ms. Miller noted that during this visit, one of the Children told her he was "really hungry," and that he weighed 31.6 pounds and wore a size 2T at four years old.  [Filing No. 37-1 at 6.]

Ms. Davis and Ms. Bellamy also submitted an Affidavit in support of the Motion to Modify Placement, in which they stated that the Moores were leaving the Children with different people, and were also leaving the Sibling and another teenage boy to care for the Children on some weekends.  [Filing No. 37-1 at 10.]  The Affidavit also outlines concerns regarding whether the Children were eating enough and had clean clothes and shoes to wear.  [Filing No. 37-1 at 10.] Ms. Davis and Ms. Bellamy stated that while "[t]he [February 10, 2021] assessment was unsubstantiated and closed…[they] continue to have concerns as [the Sibling] continues to report not being able to eat much and still being physically disciplined."  [Filing No. 37-1 at 10-11.]

According to the Moores, the Motion to Modify Placement was filed in retaliation for the Moores' refusal to provide the false testimony that Ms. Davis had asked the Moores to provide

against the Children's birth parents.  [Filing No. 27 at 6.]  The Moores claim that they were not notified of the Motion to Modify Placement, nor was it served on them or discussed with them. [Filing No. 27 at 7.]  They also claim that the Motion to Modify Placement misled the CHINS Court by failing to fully disclose that the allegations against the Moores were unsubstantiated by DCS.  [Filing No. 27 at 7.]  On April 7, 2021, the CHINS Court granted the Motion to Modify Placement and placed the Children in separate non-relative foster homes.  [Filing No. 27 at 7.]

   **E.      The Moores Adopt the Children**

   On December 2, 2021, the Probate Court granted the Moores' petition to adopt the Children, finding that DCS had unreasonably withheld its consent to the adoptions.  [Filing No. 27 at 7.] The Decrees of Adoption granted the Moores custody of the Children and ordered DCS and the Children's foster parents to cooperate with the release and immediate discharge of the children directly to the Moores' custody.  [Filing No. 27 at 7.]  On December 3, 2021, the Moores went to the foster homes where the Children were living and retrieved the Children.  [Filing No. 27 at 7.] Neither DCS nor the foster parents cooperated with the exchange, and law enforcement personnel assisted the Moores in taking custody of the Children.  [Filing No. 27 at 7.]

   **F.      DCS Continues Investigating the Moores**

   The Moores allege that after learning that the Moores had taken custody of the Children following the adoptions, Ms. Miller and Ms. Davis spoke and agreed that they would not allow the Moores to exist without the coercive interference of the State overseeing them.  [Filing No. 27 at 8.]  On December 3, 2021, Ms. Miller and Ms. Davis arrived at the Moores' home accompanied by law enforcement personnel, insisted that the Children were still wards of the State and in their custody, and demanded to conduct an immediate welfare check.  [Filing No. 27 at 9.]  There was no court order in effect on December 3, 2021 providing that the Children were continued wards of

the State.  [Filing No. 27 at 8.]  Ms. Miller and Ms. Davis knew that the Children had been adopted by the Moores and were no longer wards of the State upon their adoption, but took actions to ensure that the CHINS case remained open, including filing pleadings post-adoption and asking the CHINS Court to resolve issues regarding the Children's placement.  [Filing No. 27 at 8.]  Ms. Davis and Ms. Miller insisted that the Moores subject themselves to DCS's jurisdiction.  [Filing No. 27 at 8.]

Ms. Davis spoke with Ms. Leigh Anne Moore,[3] a Family Case Manager for DCS in its Henry County Office, and David Balmer, a Family Case Manager Supervisor for DCS in its Henry County Office, and expressed her opposition to the Moores' adoption of the Children.  [Filing No. 27 at 8.]  As a result, Ms. Moore came to the Moores' home on at least four occasions in December 2021 to reinvestigate the claims of abuse and neglect that the Henry County DCS office had previously found unsubstantiated.  [Filing No. 27 at 9.]  Among other things, Ms. Moore questioned the Moores and the Children for long periods of time, had the Moores' furniture turned over, subjected the Moores and the Children to drug testing, and required pictures of the Children's naked buttocks.  [Filing No. 27 at 9.]  Ms. Moore's actions were taken at the direction of, and with the approval of, Mr. Balmer.  [Filing No. 27 at 9.]

Additionally, Ms. Moore and Mr. Balmer caused a motion to be filed in the Henry County Circuit Court seeking an order to compel forensic interviews of the Children.  [Filing No. 27 at 9.]  Ms. Davis and Ms. Miller also provided the birth father's family with the Moores' confidential information, including their dates of birth and addresses, causing family members to show up unannounced and unwanted at the Moores' home on January 21, 2022.  [Filing No. 27 at 9.]  Ms. Davis and Ms. Miller also contacted a DCS service provider to schedule supervised visits between

---

[3] There does not appear to be any relation between Ms. Moore and the Moores.

the Children and their birth mother after her parental rights had been extinguished by the adoptions. [Filing No. 27 at 9.]  The DCS service provider contacted the Moores on January 29, 2022 to set up those supervised visits, even though there was no court order in effect on January 29, 2022 requiring any visitation between the Children and their birth mother.  [Filing No. 27 at 9.]

### G.    This Lawsuit

The Moores initiated this lawsuit on January 13, 2023, [Filing No. 1], and filed the operative Amended Complaint on April 15, 2023, [Filing No. 27].  They allege claims under 42 U.S.C. § 1983 for:

- Violation of their Fourteenth Amendment procedural and substantive due process rights by:

  o   Misrepresenting in the Motion to Modify Placement that there were allegations against the Moores that were substantiated by evidence;

  o   Failing to give the Moores notice of the Motion to Modify Placement;

  o   Reinvestigating previously unsubstantiated claims against the Moores; and

  o   Interfering with the Moores' familial relations after they adopted the Children; and

- Violation of their Fourth Amendment right against unreasonable searches and seizures by:

  o   Searching the Moores' home in December 2021 without probable cause, without a court order, and when the Children were in no imminent danger;

  o   Forcing the Moores and the Children to submit to drug testing in December 2021 without probable cause, without a court order, and when the Children were in no imminent danger; and

  o   Forcing the Moores and the Children to submit to pictures of the Children's naked buttocks in December 2021 without probable cause, without a court order, and when the Children were in no imminent danger.

[Filing No. 27 at 10-11.]

- 11 -

Ms. Miller and the State Defendants moved to dismiss all claims against them, [Filing No. 32; Filing No. 37], and the Moores oppose those motions, [Filing No. 39; Filing No. 43].

**IV.**
**DISCUSSION**

### A.    Ms. Miller's Motion to Dismiss

Ms. Miller argues in her Motion to Dismiss that she is entitled to absolute and statutory immunity as the Children's guardian ad litem, that Plaintiffs do not plausibly allege that she "acted under color of state law by virtue of a conspiracy," and that Plaintiffs cannot identify a constitutionally protected liberty interest or fundamental right that requires due process prior to adoption.  [Filing No. 33 at 6-15.]  The Court begins by addressing absolute immunity.

In support of her Motion to Dismiss, Ms. Miller argues that guardians ad litem are entitled to absolute immunity and that the allegations in the Amended Complaint only cover a time period in which she was the Children's guardian ad litem.  [Filing No. 33 at 6-7.]  She asserts that the CHINS case was ongoing through the entire period covered by the Amended Complaint's allegations and "as the CHINS proceeding remained ongoing, so too did [her] appointed duties." [Filing No. 33 at 7.]  Ms. Miller argues that the Moores' adoption of the children did not affect the CHINS case, that the CHINS Court's "exclusive jurisdiction over a CHINS proceeding is generally continuing," and that the Probate Court could adjudicate the adoption simultaneously while the CHINS Court was adjudicating the CHINS case.  [Filing No. 33 at 8.]  Ms. Miller contends that discharge of a child from a CHINS case occurs pursuant to a dispositional decree, that the dispositional goal may or may not include adoption, that the CHINS Court can modify a dispositional decree *sua sponte* or on a motion, and that a CHINS Court must only dismiss the CHINS case if an adoptive parent presents a motion showing a child has been adopted and the

- 12 -

adoption is in accord with the dispositional decree.  [Filing No. 33 at 8.]  Ms. Miller argues that

the Amended Complaint does not identify any objectives under a dispositional decree that required

discharge of the CHINS case, or any dispositional decree at all.  [Filing No. 33 at 8.]  She argues

that the Moores do not allege that the CHINS Court refused to dismiss the CHINS case, but only

allege that Ms. Miller filed documents in the CHINS Court after the adoption – which is not

inherently wrongful.  [Filing No. 33 at 8.]  Ms. Miller contends that she acted pursuant to her court-

appointed duties as the Children's guardian ad litem at all relevant times and is entitled to absolute

immunity.  [Filing No. 33 at 8-9.]

In response, the Moores argue that a guardian ad litem is only entitled to immunity when

they are acting at the court's discretion and that the Court should look to the nature of the functions

Ms. Miller performed and not simply to the fact that Ms. Miller was the Children's guardian ad

litem.  [Filing No. 39 at 5-6.]  They assert that guardians ad litem "do not enjoy absolute immunity

when their wrongful conduct is not intimately associated with their role as judicial advisors," and

that in Indiana a guardian ad litem is to represent and protect the best interests of the child, provide

the child with services requested by the court, and advise on what disposition will serve the best

interests of the child.  [Filing No. 39 at 6.]  The Moores contend that "[t]he kind of assistance a

guardian ad litem provides to a child does not extend to removing children from their homes," and

that a guardian ad litem may not release confidential information to others.  [Filing No. 39 at 7.]

They argue that Ms. Miller took several actions that were the type taken by a caseworker, not a

guardian ad litem, including that "she agreed with [Ms.] Davis that they would not allow the Moore

Family to exist without the coercive interference of the State overseeing the Moore Family, showed

up to the Moore home with law enforcement, demanded to conduct an immediate welfare check,

and insisted that the Moores subject themselves to DCS's jurisdiction," "provided the [Moores']

confidential information to others, which caused those persons to show up unannounced and unwanted at the Moores' home on January 21, 2022," and "scheduled supervised visits between the children and their natural mother after the adoption." [Filing No. 39 at 7.] Finally, the Moores argue that a guardian ad litem is only empowered to act in that role as long as the court has jurisdiction over the case and that once the Children were adopted, they were no longer CHINS, the CHINS Court was "statutorily required to dismiss the CHINS case," and Ms. Miller "no longer had any legitimate role to play in the [Moores'] lives." [Filing No. 39 at 8-9.]

Ms. Miller argues in her reply that the CHINS case remained open until December 26, 2021 and that the Moores' allegations against Ms. Miller run through December 3, 2021. [Filing No. 44 at 2.] She reiterates her argument that the Amended Complaint does not allege that a dispositional decree had been entered in the CHINS case and contends that the Moores do not allege that the CHINS Court somehow erred in not dismissing the CHINS case. [Filing No. 44 at 2-3.] Ms. Miller argues that her conduct was "aligned with her defined role as a judicial advisor," including that she checked on the Children the day after they were taken into custody by the Moores – without an order from the CHINS Court or a pending motion before the CHINS Court – which "squarely falls within her court-appointed duties to research, examine, and monitor the Children's situation in the ongoing CHINS case." [Filing No. 44 at 4.] Ms. Miller notes that the Moores do not allege in the Amended Complaint that she removed the Children from the Moores' home. [Filing No. 44 at 4.] As to the Moores' allegation that Ms. Miller disclosed confidential information to the Children's birth father's family, Ms. Miller argues that "[d]ates of birth and addresses are generally public record," and that the Moores do not allege the "communication method" between Ms. Miller and the birth father's family so the allegation is speculative. [Filing No. 44 at 4.]

- 14 -

The Seventh Circuit Court of Appeals has discussed the scope of a guardian ad litem's immunity as follows:

> Guardians ad litem…are absolutely immune from liability for damages when they act at the court's direction. They are arms of the court, much like special masters, and deserve protection from harassment by disappointed litigants, just as judges do. Experts asked by the court to advise on what disposition will serve the best interests of a child in a custody proceeding need absolute immunity in order to be able to fulfill their obligations without the worry of intimidation and harassment from dissatisfied parents. This principle is applied to a child's representative, who although bound to consult the child is not bound by the child's wishes but rather by the child's best interests, and is thus a neutral, much like a court-appointed witness.

*Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009); *see also Collins v. Carroll*, 2022 WL 220173, at *2 (E.D. Wis. Jan. 25, 2022) ("The Seventh Circuit has conferred absolute immunity on guardians ad litem for conduct that is closely related to a [guardian ad litem's] duties.") (quotation and citation omitted).

At the outset, the Court finds that Ms. Miller was acting as the Children's guardian ad litem up until December 26, 2021, when the CHINS case was closed. The Amended Complaint is silent regarding closure of the CHINS case, but the Indiana Court of Appeals noted in reversing a finding of contempt made by the Probate Court in connection with DCS's treatment of the Moores after the adoption was finalized that the CHINS case remained open until December 26, 2021. *Indiana Dep't of Child Servs. v. C.M.*, 202 N.E.3d 446, at *2 n.2 (Ind. Ct. App. 2022).[4] The Moores do not dispute that the CHINS case was still open when Ms. Miller took the actions that form the basis of their claims, instead arguing that the CHINS Court "was statutorily required to dismiss the CHINS case after the adoption," and did not do so. [Filing No. 39 at 8-9.] But whether or not the CHINS

---

[4] The Court is permitted to take judicial notice of public records, such as state court documents and the docket from the CHINS Court of the Probate Court, without converting a motion to dismiss into a motion for summary judgment. *See, e.g.*, *Spiegel*, 952 F.3d at 847; *Conn-Selmer Inc.*, 2008 WL 348774 at *4.

Court should have dismissed the CHINS case is not the issue – the fact is that the CHINS case was still open and Ms. Miller was acting as the Children's guardian ad litem up until it was closed on December 26, 2021.  *See* Ind. Code § 31-34-21-11 ("When the juvenile court finds that the objectives of the dispositional decree have been met, the court shall discharge the child and the child's parent, guardian, or custodian."); Ind. Code § 31-32-3-8 ("A guardian ad litem or court appointed special advocate serves until the juvenile court enters an order for discharge under IC 31-34-21-11.").

The allegations in the Amended Complaint relating to Ms. Miller span a timeframe that ends with Ms. Miller's interaction with the Moores on December 3, 2021.  [*See* Filing No. 27 at 8.]  Having found that Ms. Miller's appointment as the Children's guardian ad litem was still in effect through December 26, 2021 – and, consequently, for the entire timeframe in which her alleged actions took place – the Court goes on to consider whether Ms. Miller's alleged actions were at the CHINS Court's direction, or related to her duties as guardian ad litem.  The Moores allege that Ms. Miller took the following actions, in violation of their constitutional rights:

- Before the adoption, filed the Motion to Modify Placement based on previously unsubstantiated allegations and failed to notify the Moores of the Motion;

- After the adoption:

  o spoke with Ms. Davis and "agreed that they would not allow the Moore Family to exist without the coercive interference of the State overseeing the Moore Family";

  o performed a welfare check on the Children;

  o took actions to ensure that the CHINS case remained open by filing documents in the CHINS Court;

  o provided the Children's birth father's family with the Moores' confidential information, including dates of birth and address; and

   ○ contacted a DCS service provider to schedule supervised visits between the Children and their birth mother.

[Filing No. 27 at 6-9.]

  Indiana Code § 31-9-2-50 provides that a guardian ad litem is appointed by a court to "represent and protect the best interests of a child," and to "provide the child with services requested by the court, including:…researching;…examining;…advocating;…facilitating; and…monitoring…the child's situation." The Court finds that all of Ms. Miller's alleged actions were within the scope of the types of duties performed by a guardian ad litem. They include updating the CHINS Court regarding her position about the placement of the Children with the Moores before the adoption, monitoring the Children's situation by conducting a visit immediately after the adoption and while the CHINS case was still open,[5] and facilitating visits between the Children and their birth parents.

  The Moores characterize Ms. Miller's actions as outside the scope of her role as guardian ad litem. Upon closer review, the Court finds that in reality the Moores are setting forth actions that are within the scope, but that the Moores allege are illegal. A disagreement with the guardian ad litem's actions does not mean that the actions were outside of her role as guardian ad litem. Even when a plaintiff alleges that a guardian ad litem conspired with another to deprive him or her of custody of a child – including by communicating with others about the child, basing their actions on false allegations, or not providing certain information to the plaintiff (such as a report) – those acts are considered "within the course of…court-appointed duties" and are protected by immunity.

---

[5] The Moores argue in response to Ms. Miller's Motion to Dismiss that "[t]he kind of assistance a guardian ad litem provides to a child does not extend to removing children from their homes," [Filing No. 39 at 7], but they do not allege that Ms. Miller participated in the actual removal of the Children from their home, [*see* Filing No. 27]. Rather, they allege that she filed the Motion to Modify Placement, which is within the scope of a guardian ad litem's duties.

*Cooney*, 583 F.3d at 970; *see also Daniels v. Grady*, 2018 WL 1586243, at \*4 (N.D. Ill. Apr. 2, 2018) ("That a guardian ad litem lied or misrepresented facts does not defeat absolute immunity, as long as the conduct complained of occurred while she was acting within the scope of her role as a child representative."); *Cf. Kohl v. Murphy*, 767 F.Supp. 895, 901 (N.D. Ill. 1991) (denying guardian ad litem's motion to dismiss on immunity grounds where plaintiff alleged that guardian ad litem "engaged in a systematic public relations campaign to smear [adoptive parents]," including participating in interviews with CNN and other television shows, and writing an article for Good Housekeeping magazine).

Ms. Miller's alleged actions – even if inappropriate or wrong – were all taken as part of her role as the Children's guardian ad litem, and she is entitled to absolute immunity for those actions.[6]

Accordingly, the Court **GRANTS** Ms. Miller's Motion to Dismiss.[7]  [Filing No. 32.]

---

[6] The Moores argue in a footnote in their response brief that Ms. Miller's Motion to Dismiss could be denied on the ground that "it is improper to move for a dismissal under Rule 12(b)(6) based on an affirmative defense." [Filing No. 39 at 4 n.1.] But an affirmative defense may be a proper basis for dismissing a claim when "the allegations of the complaint set forth everything necessary to satisfy the affirmative defense." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016) (quotation and citation omitted). Here, the Moores allege that Ms. Miller was the Children's guardian ad litem and the actions that they allege Ms. Miller took were all within the scope of that role. Consequently, dismissal based on immunity grounds is proper.

[7]  The Court need not consider Ms. Miller's other arguments, but notes that she is a private person who is not subject to liability under 42 U.S.C. § 1983 unless she conspired with a state actor to deprive Plaintiffs of their constitutional rights. *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998). The Moores' only allegation of a conspiracy is that "[a]fter learning that the Moores took custody of [the Children] following the adoption, [Ms.] Miller and [Ms.] Davis spoke and agreed that they would not allow the Moore Family to exist without the coercive interference of the State overseeing the Moore Family." [Filing No. 27 at 7-8.] This single statement, which provides no details regarding the alleged agreement, does not meet the heightened pleading required for a § 1983 conspiracy allegation. *See Cooney*, 583 F.3d at 971 (where plaintiff alleged "vast, encompassing conspiracy" between child's representative and child's psychiatrist to deprive plaintiff of custody, plaintiff's allegations "must meet a high standard of plausibility"). The Moores' claims against Ms. Miller fail for this reason as well.

### B.     The State Defendants' Motion to Dismiss

In support of their Motion to Dismiss, the State Defendants argue that the Moores do not sufficiently allege a violation of their rights under § 1983 for the time period before the Moores adopted the Children and, even if they did, the State Defendants are entitled to qualified immunity; that the actions the Moores allege the State Defendants took all comport with their statutory duties under Indiana law; and that the Moores have not set forth any allegations detailing Mr. Balmer's personal involvement in the alleged constitutional violations.  [Filing No. 38 at 3-9.]  The Court considers the State Defendants' arguments in turn.

#### 1.     The Moores' Pre-Adoption Claims

The Moores allege that before they adopted the Children and while they were acting as the Children's foster parents, the State Defendants violated the Moores' Fourteenth Amendment procedural and substantive due process rights by misrepresenting in the Motion to Modify Placement that there were allegations against the Moores that were substantiated by evidence and by failing to give the Moores notice of the Motion.  [Filing No. 27 at 10.]

The State Defendants argue in support of their Motion to Dismiss that they are entitled to qualified immunity because the Moores cannot establish that they had a protected liberty interest in a familial relationship with the Children during the time that they were foster parents and before they adopted the Children.  [Filing No. 38 at 4-5.]  They note that "the facts presented on the face of the complaint do not assert contact with [the Children] prior to DCS placing them nor after DCS removed [them] and prior to the adoption being granted."  [Filing No. 38 at 5.]  The State Defendants contend that even if the Moores can show that they had a liberty interest in a familial relationship with the Children while they were foster parents, they cannot establish that such a right was clearly established at that time.  [Filing No. 38 at 5.]  They assert that "the Defendants

- 19 -

prior to the adoption would be afforded qualified immunity and arguably post-adoption as the custody and placement of the children was being addressed in two different court orders." [Filing No. 38 at 6.]

In their response, the Moores argue that Indiana law governs whether the Moores had a protected liberty interest in their pre-adoption relationship with the Children and that "Indiana place[s] relative foster parents, like the Moores, in the same position as natural parents for the purposes of the process that they are due before children can be removed from a home." [Filing No. 43 at 7.]  The Moores point to various Indiana statutes, which they argue "place[ ] foster parents in the same position as natural parents with regard to when the State can sever the familial relationship," and assert that foster parents have even more rights when a child has been placed with them for the purpose of adoption.  [Filing No. 43 at 8.]  They note that they had fostered the Children from young ages for a period of two years, that they "were precisely the kind of long-term foster parents that the Indiana legislature has granted the same rights as natural parents – the children could not have been properly removed from their care without due process," and that they are blood relatives of the Children.  [Filing No. 43 at 10.]  Finally, the Moores argue that "it was clearly established in 2021 that a foster child who was placed with a foster family as an infant, had not lived with its natural parents, had remained continuously with that foster family for almost a year, and was being adopted has a protected liberty interest in maintaining its relationship with the foster family." [Filing No. 43 at 12.]  They acknowledge while "there is no clearly established right for foster families to stay together," this case is different because the Moores and the Children are blood relatives, the birth parents' rights had been terminated, the "court-approved permanency plan provided for the children's placement with the Moores," and the Moores had been actively pursuing adopting the Children.  [Filing No. 43 at 14.]

In their reply, the State Defendants reiterate their argument that there is no clearly established right for foster families to remain together.  [Filing No. 48 at 2.]

"A public official is entitled to qualified immunity from suit unless [she] violated a clearly established constitutional right." *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  Dismissal of a claim based on qualified immunity is only appropriate where "the plaintiffs' well-pleaded allegations, taken as true, do not 'state a claim of violation of clearly established law.'" *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996)).  Whether qualified immunity applies involves two questions, which may be addressed in either order: "(1) whether the facts alleged…by the plaintiff establish a violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Dockery*, 911 F.3d at 466 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  "To show that a right is clearly established, the plaintiff must demonstrate that existing caselaw at the time of the events in question 'placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.") (quotations and citations omitted).

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.  The Court assumes without deciding that the Moores had a constitutional right to maintain their relationship with the Children

before the adoption, and goes on to consider whether this right was clearly established.[8]   The parties agree that the Moores did not have a clearly established constitutional right to maintain their relationship with the Children simply by virtue of being foster parents.   [*See* Filing No. 43 at 14 (the Moores conceding that "there is no clearly established right for foster families to stay together"); *see also Procopio v. Johnson*, 994 F.2d 325, 333 (7th Cir. 1993) ("Although [plaintiffs'] plight is a sympathetic one, their long-term foster relationship with [the child] does not create an interest within the Fourteenth Amendment's protection of liberty.")]   Rather, the Moores argue that their circumstances are different because they are related to the Children by blood, they had been the Children's' foster parents for several years, and they were planning to adopt the Children, and contend that six cases clearly established their Fourteenth Amendment right to a familial relationship with the Children under these circumstances: *Smith v. Org. of Foster Families for Equality & Reform* [("*OFFER*")], 431 U.S. 816 (1977); *Rivera v. Marcus*, 696 F.2d 1016 (2d Cir. 1982); *Elwell v. Byers*, 699 F.3d 1208 (10th Cir. 2012); *M.S. v. People*, 303 P.3d 102 (Col. S. Ct. 2013); *McLaughlin v. Pernsley*, 654 F.Supp. 1567 (E.D. Pa. 1987); *Prince v. Massachusetts*, 321 U.S. 158 (1944); and *D.L. v. Huck*, 978 N.E.2d 429 (Ind. Ct. App. 2012).   However, none of these

---

[8] In their response brief, the Moores identify the right at issue as "whether…a foster child who was placed with a foster family as an infant, had not lived with its natural parents, had remained continuously with that foster family for almost a year, and was being adopted has a protected liberty interest in maintaining its relationship with the foster family."   [Filing No. 43 at 12.]   But earlier in their response brief, the Moores argue that "Indiana place[s] relative foster parents, like the Moores, in the same position as natural parents for the purposes of the process that they are due before children can be removed from a home."   [Filing No. 43 at 7.]   The Court reads the Moores' procedural and substantive due process claim for the pre-adoption period to focus on the State Defendants' alleged misrepresentations regarding allegations against the Moores that led to the Children's removal from the Moores' home and the alleged failure to give notice to the Moores of the Motion to Modify Placement.   [*See* Filing No. 27 at 10.]   While perhaps a distinction without a difference, their allegations in the Amended Complaint appear to focus on the Moores' right to keep the Children in their home, rather than on the Children's right to remain with the Moores, and this is the right upon which the Court will focus.

cases stand for the proposition that foster parents have a right to due process related to keeping foster children in their home before they are adopted based on a blood relationship to the foster children, the length of the foster arrangement, or a plan to adopt the foster children.

First, the Moores argue that *OFFER*, 431 U.S. 816, stands for the proposition that whether there is a liberty interest for foster parents in the familial relationship with a foster child is left to state law. [Filing No. 43 at 7.] They point to Indiana Code provisions which allow foster parents to petition to intervene in certain CHINS proceedings, entitle them to a hearing before ruling on a petition to intervene, require DCS to complete a permanency plan and hold a hearing to obtain approval of the plan for a child who has been placed with foster parents for the purpose of adoption, and require DCS to adopt a foster parents bill of rights. [Filing No. 43 at 8-9.] The *OFFER* Court, however, explicitly declined to decide whether a foster parent has a protectable liberty interest in a familial relationship with a foster child. *Id.* at 847 ("[A]ppellee's claim to a constitutionally protected liberty interest raises complex and novel questions. It is unnecessary for us to resolve those questions definitively in this case."). And the Indiana Code provisions to which the Moores point – while providing some procedural rights to foster parents – do not clearly establish a liberty interest under the Fourteenth Amendment.

Second, *Rivera*, *Elwell*, *M.S.*, and *McLaughlin* are not binding law within the Seventh Circuit. *See Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000) ("To determine whether a right is clearly established, we look first to controlling Supreme Court precedent and our own circuit decisions on the issue."). They also do not represent "a consensus of cases of persuasive authority" outside of the Seventh Circuit such that "a reasonable [official] could not have believed that [her] actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

Moreover, many of those cases, and the *Prince* case, are not instructive in any event.  *See M.S.*, 303 P.3d at 107 (holding that "the preadoptive foster parents…do not possess a liberty interest grounded in the United States Constitution"); *Elwell*, 699 F.3d at 1214 (relying in part on applicable state law in finding that foster parents had liberty interest in familial relationship with foster child because "nothing in either [Kansas] law or the contractual arrangements at issue would have tempered [plaintiffs'] reasonable expectation of developing a permanent relationship with [the foster child]") (quotation and citation omitted); *McLaughlin*, 654 F.Supp. at 1584 (finding that foster parents had standing to request that foster child be returned to their care as a remedy for alleged violations of foster parents' equal protection rights); *Prince*, 321 U.S. at 161-62 (affirming conviction of child's aunt and custodian for violating Massachusetts child labor law prohibiting parent, guardian, or custodian from permitting a minor under her control to work).

The most factually analogous case upon which the Moores rely is *D.L. v. Huck*, 978 N.E.2d 429.  There, the Indiana Court of Appeals held that foster parents who had a blood relationship to their foster child and had begun adoption proceedings had a liberty interest in maintaining a familial relationship with the foster child.  The Indiana Court of Appeals noted that the foster parents "had a pre-existing biological relationship with [the child] that was unrelated to any contract and that is not typical of foster families," and that there was no tension between the foster parents and the birth parents because the birth parents wanted the foster parents to raise the child and had terminated their parental rights with the expectation that the foster parents would adopt the child.  *Id.* at 436-37.  It found that "[g]iven that lack of tension, in addition to the multiple ties that the [foster parents ] had to [the foster child] – they are her blood relatives, they were her foster parents, they were in the process of adopting her, and they had raised her practically since birth –

it seems at odds with reality to conclude that they did not have any liberty interest in their relationship with her." *Id.* at 437.

While the Court acknowledges some similarities between this case and *Huck*, a single, state intermediate appellate court opinion does not constitute controlling authority setting forth the parameters of a federal right, especially where binding precedent from a federal appellate court disclaims the existence of that right. *See, e.g.*, *Kyees v. County Dept. of Pub. Welfare of Tippecanoe Cnty.*, 600 F.2d 693, 699 (7th Cir. 1979) (holding that foster parents who had fostered child for several years and sought to adopt him did not have "a liberty interest in a foster care arrangement of the nature and duration considered here."). Accordingly, no controlling authority establishes the right the Moores seek to vindicate in this lawsuit.

Where there is no controlling authority, a plaintiff must show that there "was such a clear trend in the caselaw that [the court] can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time." *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017). This is a lofty standard, and the Supreme Court has stressed that:

> [t]o be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know.

*District of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (quotation and citation omitted). *Huck* does not represent "such a clear trend in the case law" indicating that foster parents in the Moores' position have a clearly established liberty interest in maintaining a familial relationship with their foster children, and the Moores have not pointed to other cases demonstrating the "robust consensus" described by the Supreme Court.

Because the Moores have not identified a sufficiently clear foundation in then-existing precedent that the Moores had a liberty interest in a familial relationship with the Children before they were adopted, the Court finds that the State Defendants are entitled to qualified immunity for the Moores' Fourteenth Amendment claims based on acts taking place pre-adoption. The State Defendants' Motion to Dismiss is **GRANTED** as to the Moores' pre-adoption claims.

2.      *The Moores' Post-Adoption Claims*

The Moores allege that after they adopted the Children, the State Defendants violated their Fourth Amendment rights against unreasonable searches and seizures in December 2021 when they searched the Moores' home, forced them to submit to drug testing, and forced them to submit to pictures of the Children's naked buttocks, all without probable cause, without a court order, and when the Children were in no imminent danger. [Filing No. 27 at 10.] They also allege that after they adopted the Children, the State Defendants violated their procedural and substantive due process rights under the Fourteenth Amendment when they reinvestigated previously unsubstantiated claims against the Moores and "interfered with [the Moores'] familial relations." [Filing No. 27 at 11.]

In support of their Motion to Dismiss, the State Defendants argue that all of the actions the Moores allege they took were required or authorized by Indiana statute. [Filing No. 38 at 6-8.] They assert that they had an ongoing statutory duty to care for the Children, who were still wards of the State pursuant to the ongoing CHINS case, after the adoption on December 2, 2021. [Filing No. 38 at 6.] The State Defendants contend that the ongoing CHINS case "would take precedence over the adoption as long as the [CHINS] case remained ongoing under Indiana law," and that they were subject to two duties: (1) "a statutory duty to investigate allegations of abuse or neglect and…statutory duties to maintain contact with wards of the state"; and (2) "an ongoing duty to

care for a ward of the state and investigate allegations of abuse." [Filing No. 38 at 7-8.] The State Defendants maintain that because there were numerous reports of abuse and neglect, and the CHINS case had not been closed, they were required by statute to investigate the allegations, provide progress reports, and update the CHINS Court regarding any changes in placement. [Filing No. 38 at 8.]

In their response, the Moores argue that they allege in the Amended Complaint that there was no court order providing that the Children were wards of the state after the adoption and that whether there was an ongoing CHINS case is "a factual dispute that cannot be resolved at the pleadings stage." [Filing No. 43 at 16-17.] They contend that the State Defendants' argument that "orders in the Juvenile Court would take precedence over the adoption as long as the case remained ongoing under Indiana law," is unsupported and waived. [Filing No. 43 at 17.] Rather, the Moores assert, "Indiana's courts have explicitly held that juvenile courts no longer have responsibility for formerly CHINS children after they have been adopted." [Filing No. 43 at 17.]

In their reply, the State Defendants point to an Indiana Code provision they relied upon in their opening brief, which states that juvenile courts have "exclusive original jurisdiction" over CHINS cases. [Filing No. 48 at 2-3.]

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment applies to child welfare workers such as the State Defendants. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1010 (7th Cir. 2000). As noted above, the Fourteenth Amendment prohibits a state from depriving any person of life, liberty or property without due process of law. U.S. Const. amend. XIV. In connection with the post-adoption claims, the parties rest their arguments entirely on whether or not the CHINS case was

still open when the actions forming the basis of those claims took place.  As the Court found in connection with Ms. Miller's Motion to Dismiss, the CHINS case was open until December 26, 2021.[9]  No one took any action to close the case before that, and whether or not the case should have been closed when the Children's adoption became final on December 2, 2021 is irrelevant – it was not, in fact, closed until December 26, 2021.

As for the State Defendants' alleged actions that took place before the CHINS case was closed on December 26, 2021, they essentially argue that they were following Indiana law by investigating the allegations set forth in the Motion to Modify Placement, so cannot have violated the Moores' constitutional rights.  The Court acknowledges that Indiana law required the State Defendants to investigation those allegations.  Specifically, Indiana Code § 31-33-8-1 requires DCS to: "initiate an appropriately thorough child protection assessment of every report of known or suspected child abuse or neglect the department receives"; "initiate an onsite assessment immediately, but not later than two (2) hours, after receiving [a report alleging that a child is a victim of child abuse]"; initiate an assessment "within a reasonably prompt time" after receiving a report of child neglect; and initiate an assessment regardless of time of day "[i]f the safety or well-being of a child appears to be endangered."  Indiana Code 31-33-8-3 further provides that DCS shall "cause color photographs to be taken of the areas of trauma visible on a child who is subject to a report."

The Court also acknowledges that "[t]he right to familial relations is not…absolute," and "does not include the right to be free from child abuse investigations."  *Doe v. Heck*, 327 F.3d 492,

---

[9] When the CHINS case was closed is not "a factual dispute that cannot be resolved at the pleadings stage," as the Moores argue.  [Filing No. 43 at 17.]  Rather, as the Court noted earlier, it is an issue that is easily resolved by consulting public records of which the Court is permitted to take judicial notice.

520 (7th Cir. 2003).  But a "balance must be reached between the fundamental right to the family unit and the state's interest in protecting children from abuse."  *Brokaw*, 235 F.3d at 1019.  In striking this balance, courts consider: "(1) the nature of the privacy interest upon which the action taken by the state intrudes; (2) the character of the intrusion that is complained of; (3) the nature and immediacy of the governmental concern at issue; and (4) the efficacy of the means employed by the government for meeting this concern."  *Doe*, 327 F.3d at 520.  "[A]lthough child welfare caseworkers may investigate allegations of child abuse without violating parents' constitutional right to familial relations, they may not do so arbitrarily."  *Id.*

The State Defendants have presented a reason for investigating the Moores and checking up on the Children after the adoption took place, but the accusations leading to the investigation do not necessarily foreclose the Moores' claims.  Instead, whether the State Defendants violated the Moores' Fourth and Fourteenth Amendment rights by continuing to investigate them and visiting their home after the adoption in December 2021 based on accusations of which DCS was aware in March 2021 – some nine months before – is a question of fact that cannot be resolved at the motion to dismiss stage.  "[C]hild welfare caseworkers are often called upon to make difficult decisions without the benefit of extended deliberation," and "there is, perhaps, no more worthy object of the public's concern than preventing the most vulnerable members of society, children of tender years, from being physically abused."  *Id.* at 525.  But "[t]his unquestionably compelling state interest…may not be used as a pretense for arbitrary governmental intrusion into the private affairs of its citizens," *id.*, and the Court simply cannot make a determination regarding the constitutionality of the State Defendants' actions at the motion to dismiss stage.

Moreover, the State Defendants premise their Motion to Dismiss the Moores' post-adoption claims on the fact that the CHINS case was still open.  But it is not clear from the Amended

Complaint whether all of the Moores' allegations are based on actions which took place before the CHINS case was closed on December 26, 2021. For example, some of the Moores' allegations refer generally to December 2021, and not to a particular date during that month. [*See* Filing No. 27 at 9 (alleging that Ms. Moore "came to the Moores' home on at least four occasions in December 2021 to reinvestigate the claims of abuse and neglect that the Henry County DCS office had previously found unsubstantiated").] Other allegations do not provide a timeframe at all. [*See, e.g.*, Filing No. 27 at 9 (alleging that Ms. Davis and Ms. Miller "also provided [Mr. Moore's] family [with] the Moores' confidential information including their dates of birth and address, causing those persons to show up unannounced and unwanted at the Moores' home"); Filing No. 27 at 9 (alleging that Ms. Davis and Ms. Miller "also contacted a DCS service provider to schedule supervised visits between [the Children and their birth mother] after [the birth mother's] parental rights had been extinguished by the adoptions").] Even if dismissal of the Moores' claims was warranted due to the pendency of the CHINS case, the Court cannot determine from the Amended Complaint whether all of the actions that form the basis for the Moores' claims took place before the CHINS case was closed.

In short, the Moores have sufficiently pled Fourth Amendment unreasonable search and seizure claims related to the State Defendants' post-adoption actions, including searching the Moores' home, forcing the Moores to submit to drug testing, and forcing the Moores to submit to pictures of the Children's naked buttocks. They have also sufficiently pled procedural and substantive due process claims under the Fourteenth Amendment related to the State Defendants' post-adoption actions of reinvestigating previously unsubstantiated claims against the Moores and interfering with the Moores' familial relations with the Children. The State Defendants' Motion to Dismiss those claims is **DENIED**.

- 30 -

3.    *Claims Against Mr. Balmer*

The State Defendants argue that a defendant can only be liable under § 1983 for constitutional violations if he personally caused the deprivations and that the Amended Complaint "is devoid of factual allegations related to Mr. Balmer." [Filing No. 38 at 9.]  They assert that "[t]he only time [Mr. Balmer] is mentioned is to state that he sought [a] court order to compel an interview of [the Children]." [Filing No. 38 at 9.]

In their response, the Moores set forth additional allegations in the Amended Complaint that refer specifically to Mr. Balmer. [Filing No. 43 at 18-19.]  They note that the State Defendants' argument regarding Mr. Balmer's involvement appears to have been copied from their Motion to Dismiss the original Complaint, and that the Amended Complaint added allegations specific to Mr. Balmer. [Filing No. 43 at 18.]

In their reply, the State Defendants do not address the Moores' arguments regarding Mr. Balmer. [*See* Filing No. 48.]

"Failure to respond to an argument…results in waiver," and "silence leaves us to conclude" that the silent party is making a concession. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).  Because the State Defendants did not respond to the Moores' argument regarding Mr. Balmer's personal involvement, they have waived any opposition to that argument.

Additionally, in any event, the Moores have sufficiently alleged that Mr. Balmer was personally involved in the alleged constitutional violations.  Specifically, they allege that Ms. Moore, at the direction and with the approval of Mr. Balmer, came to the Moores' home on at least four occasions in December 2021 and questioned the Moores and the Children for long periods of time, had the Moores' furniture turned over, subjected the Moores and the Children to drug testing, and required pictures of the children's naked buttocks. [Filing No. 27 at 9.]  They allege further

that Ms. Moore and Mr. Balmer "caused a motion to be filed in the Henry County Circuit Court

seeking an order to compel a forensic interview of [the Children]." [Filing No. 27 at 9.]  The State

Defendants' Motion to Dismiss is **DENIED** to the extent it seeks dismissal of the claims against

Mr. Balmer for failing to sufficiently allege his personal involvement.

**V.**
**CONCLUSION**

For the foregoing reasons, the Court:

- **GRANTS** Ms. Miller's Motion to Dismiss, [32], and **DISMISSES** the claims against Ms. Miller **WITH PREJUDICE**.  The Clerk is **DIRECTED** to **TERMINATE** Ms. Miller as a party to this case;

- **DENIES** the Moores' Motion to Exclude, [42];

- **GRANTS IN PART** the State Defendants' Motion to Dismiss, [37], to the extent that all claims against the State Defendants based on actions taken prior to the Moores' adoption of the Children on December 2, 2021 are **DISMISSED WITH PREJUDICE**[10];

- **DENIES IN PART** the State Defendants' Motion to Dismiss, [37], as it relates to claims against the State Defendants based on actions taken after the Moores' adoption of the Children on December 2, 2021, and those claims **SHALL PROCEED**; and

- **DENIES IN PART** the State Defendants' Motion to Dismiss, [37], to the extent it finds that the Moores have sufficiently alleged that Mr. Balmer was

---

[10] It is proper to dismiss the claims against Ms. Miller and the claims against the State Defendants based on actions taken prior to the Moores' adoption of the Children with prejudice.  A dismissal on immunity grounds is with prejudice.  *See Hinnen v. Kelly*, 992 F.2d 140, 144 (7th Cir. 1993). Moreover, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend his or her complaint once as a matter of course in response to a motion to dismiss.  *Brown v. Bowman*, 2011 WL 1296274, at *16 (N.D. Ind. 2011).  The 2009 notes to that rule emphasize that this amendment "will force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion."  Here, the Moores have already amended their Complaint in response to earlier motions to dismiss, [*see* Filing No. 16 (the State Defendants' first Motion to Dismiss); Filing No. 24 (Ms. Miller's first Motion to Dismiss); Filing No. 27 (Amended Complaint).]  The Court is not required to give the Moores another chance to plead the claims which it has determined should be dismissed and, in its discretion, dismisses those claims with prejudice.

personally involved in the alleged constitutional violations, and the post-adoption claims against Mr. Balmer **SHALL PROCEED**.

No partial final judgment shall issue. The Court requests that the Magistrate Judge confer with the parties as soon as practicable regarding an agreed resolution of the remaining claims.

Date: 7/26/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

Magistrate Judge Garcia